IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | 1:19-CR-521 |
| | ) | |
| TIMOTHY SCOTT RANDLEMAN, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

The defendant-inmate, Timothy Randleman, has filed a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A). Mr. Randleman asks the Court to reduce his sentence to time-served and modify his supervised release based on the risk of COVID-19, the need to care for his 67-year-old mother following the death of his brother, and his positive accomplishments while in prison. Because Mr. Randleman has not shown extraordinary and compelling circumstances and the § 3553(a) factors do not support a sentence reduction, the motion will be denied.

I.  **Procedural History**

On November 8, 2019, Mr. Randleman pled guilty to one count of distribution of cocaine hydrochloride and one count of possession of a firearm in furtherance of a drug trafficking crime. Minute Entry 11/08/2019; Doc. 13. He was sentenced to 15 months on the drug charge and 60 months on the firearm charge, to run consecutively, for a total of 75 months imprisonment. Doc. 22 at 2; Minute Entry 02/20/2020. Mr. Randleman did not appeal.

In January 2023, Mr. Randleman filed this motion for compassionate release. Doc. 24. While he contends that he has a heightened risk of death from COVID-19, he also states in his motion that he "does not contend to have medical conditions." *Id.* at 1. His motion is based primarily on the need to care for his mother.

The Court ordered the Probation Office to file a supplemental report and directed the government to respond if it objected. Doc. 27. Briefing is now complete. *See* Doc. 29; Doc. 31; *see also* Doc. 28.

## II. Crimes of Conviction and Sentencing

In summer 2018, Mr. Randleman told a confidential informant that he would sell the informant a firearm from his personal collection. Doc. 18 at ¶ 3.[1] He also told the informant that he traveled out of town approximately once a week to replenish his supply of cocaine. *Id.* Over the next several months, law enforcement conducted several controlled buys of cocaine from Mr. Randleman. *Id.* at ¶¶ 4, 6, 8–9. Surveillance and information from informants indicated that Mr. Randleman sold drugs in the parking lots of local restaurants. *Id.* at ¶¶ 3, 5, 9.

On the day of the last controlled purchase, July 11, 2019, investigators obtained a warrant for Mr. Randleman's arrest and a search warrant for his residence. *Id.* at ¶ 10. When arrested, Mr. Randleman possessed 6.989 grams of cocaine hydrochloride on his person, in ten individually wrapped bags, and $239 in U.S. currency. *Id.* During the execution of the search warrant, investigators seized 59.06 grams of cocaine

---

[1] The Court adopted the presentence investigation report, Doc. 18, without change. Doc. 23 at 1.

hydrochloride and a loaded Norinco .45 caliber pistol in Mr. Randleman's home. *Id.* at ¶ 11. Mr. Randleman's girlfriend was present at the residence and told investigators that he sold drugs at the BP gas station, Applebee's, and Buffalo Wild Wings and that she had heard him having conversations to set up drug deals. *Id.* at ¶ 12. In total, Mr. Randleman was accountable for 77.619 grams of cocaine hydrochloride. *Id.* at ¶ 14.

Mr. Randleman was charged in a four-count indictment in September 2019. Doc. 1. In November 2019, he pled guilty to distribution of cocaine hydrochloride and possession of a firearm in furtherance of a drug trafficking crime. *See* Doc. 13; Minute Entry 11/08/2019. Mr. Randleman's total offense level for count one was 13 and his criminal history placed him into criminal history category II, making his guideline range on that count 15–21 months. *See* Doc. 18 at 24. By statute, the minimum sentence on the firearm charge was 60 months, consecutive to any other sentence, and the guidelines suggested the statutory minimum. *See id.* The Court sentenced Mr. Randleman to 15 months on the first count and 60 months on the second to run consecutively, for a total of 75 months, followed by three years of supervised release. Doc. 22 at 2–3.

### III. Other Relevant Facts

Mr. Randleman is now 45 years old. *See* Doc. 18 at 2 (showing birth date as July 19, 1977). He has served approximately 45 months of his 75-month sentence. *See* Doc. 29-5 at 4 (showing that he had served approximately 41 months as of January 23, 2023). He is currently housed at FCI McDowell, and he is presently scheduled for release on February 2, 2025. *See Find an Inmate*, FED. BUREAU OF PRISONS, https://www.bop.gov/inmateloc (last visited May 31, 2023).

Mr. Randleman's criminal history began at age 12, with a juvenile adjudication for shoplifting. Doc. 18 at ¶ 31. At the age of 15, he was convicted as an adult of five counts of felony breaking and entering and one count of felony second degree burglary. *Id.* at ¶¶ 32–33. He spent over nine years in prison for these crimes. *See id.*

His time in prison, from approximately age 15 to 24, seems to have had some deterrent effect. His criminal history for the next fifteen years or so was limited to misdemeanors. *See id.* at ¶¶ 34–38. This was true until, as reflected in the crimes here, he began his career as a drug dealer in earnest.

While incarcerated, Mr. Randleman has had one disciplinary report for possessing an unauthorized cell phone in June of 2021. Doc. 28 at 1. As a result, he was placed into disciplinary segregation for 15 days and lost phone and email privileges for 6 months. *Id.*

FCI McDowell currently reports no open cases of COVID-19 and that 903 of 1531 inmates have received both doses of a COVID-19 vaccine since the start of the pandemic. *Inmate COVID-19 Data*, FED. BUREAU OF PRISONS, https://www.bop.gov/about/statistics/statistics_inmate_covid19.jsp (last visited May 31, 2023). Mr. Randleman has been offered the COVID-19 vaccine several times but has refused to accept it. *See* Doc. 29-1 at 9 (November 2021); *id.* at 34 (March 2021 and January 2022).

In his presentence interview, Mr. Randleman reported that his mother, Shirley Lowery, was 62 years old and unemployed due to disability. Doc. 18 at ¶ 46. The Probation Office spoke with Ms. Lowery, who told them she had "suffered a stroke and an aneurism." *Id.* Mr. Randleman has provided some of Ms. Lowery's medical records, Doc. 25, which show that she suffers from hypertension, chronic obstructive pulmonary

4

disease, gastroesophageal reflux disease, anxiety, osteoarthritis of the spine, encephalopathy, and cerebral edema. *Id.* at 1–2. The records also report some "intracerebral" and "intraventricular" hemorrhages, *id.* at 2, and document that Ms. Lowery is taking several medications. *Id.* at 3–4. It appears from the Probation Office's memorandum that Ms. Lowery currently lives alone. *See* Doc. 28.

In his presentence interview, Mr. Randleman reported that he has one half-brother, Kenneth Lee Lowery. Doc. 18 at ¶ 47. Ms. Lowery reported that Mr. Randleman "has another maternal half-brother . . . with whom he has no relationship." *Id.* According to Mr. Randleman now, Mr. Lee Lowery was the caretaker for his and Mr. Randleman's mother, Ms. Lowery, until he passed away in October 2022. Doc. 24 at 1; Doc. 24-2; Doc. 31 at 1. He also says in his reply brief that he has "never met[] or seen" the other brother and that this brother "has no relationship with his mother." Doc. 31 at 1.

Consistent with the purposes of his motion, Mr. Randleman's proposed release plan is to live with his mother. Doc. 28 at 1. His mother confirmed this on February 8, 2023, and the Probation Office has approved this release plan. *Id.* In his motion and reply, Mr. Randleman says he has employment set up for after his release as well as healthcare, but he has not provided any other evidence or details to support this claim. *See* Doc. 24 at 2; Doc. 31 at 1; *see also* Doc. 24-1 at 2.

IV. **The Current Motion**

In January, Mr. Randleman filed the pending motion for compassionate release, Doc. 24, asking the Court to reduce his sentence to time served. In support of his motion, he cites his "heightened risk for death" from COVID-19, *id.* at 1, and the fact that the
5

pandemic has made his sentence "harsher and more punitive" than envisioned at his original sentencing. *Id.* at 3. But he "does not contend to have medical conditions," *id.* at 1, and the bulk of his motion and entirety of his reply brief, Doc. 31, are focused on his family circumstances. According to Mr. Randleman, "he is needed at home to be a caretaker for his mother," Doc. 24 at 2, who "has no one" else to help her. Doc. 31 at 1. He asks to be released so that he can live with Ms. Lowery, help her with her bills and medical expenses, make sure she takes her medicines, and generally keep an eye on her. *See generally* Doc. 24; Doc. 31.

V.  Discussion

Courts do not have unfettered jurisdiction or discretion to modify criminal sentences. *See United States v. Goodwyn*, 596 F.3d 233, 235 (4th Cir. 2010) ("The law closely guards the finality of criminal sentences against judicial change of heart." (cleaned up)). A court may modify a sentence only when a provision in the Federal Rules of Criminal Procedure or a statute expressly permits it to do so. *See* 18 U.S.C. § 3582(c). Section 3582(c)(1)(A), often called the "compassionate release" provision, is one such statutory provision.

For a sentence reduction under § 3582(c)(1)(A) to be appropriate, the movant must satisfy the administrative exhaustion requirement, when invoked by the government. *See United States v. Muhammad*, 16 F.4th 126, 130 (4th Cir. 2021). Mr. Randleman alleges exhaustion, *see* Doc. 24-1, and the government does not challenge that contention. *See* Doc. 29 at 7.

Section 3582(c)(1)(A) also requires that extraordinary and compelling reasons merit a reduction in sentence, that the reduction is consistent with any applicable policy statements issued by the Sentencing Commission,[2] and that the relevant § 3553(a) sentencing factors do not counsel against early release. *See United States v. McCoy*, 981 F.3d 271, 275 (4th Cir. 2020); *United States v. High*, 997 F.3d 181, 185–86 (4th Cir. 2021). Even if the court finds that extraordinary and compelling reasons support release, the court in its discretion may deny a defendant's motion after balancing the applicable § 3553(a) factors. *High*, 997 F.3d at 186.

### A. Extraordinary and Compelling Reasons

#### 1. COVID-19

Mr. Randleman contends that his "heightened risk for death" from COVID-19 supports his motion for compassionate release. Doc. 24 at 1. COVID-19 may be a relevant factor in finding extraordinary and compelling circumstances under § 3582 but typically only when combined with age, severe health issues, and/or inadequate medical

---

[2] There are currently no policy statements applicable to motions filed directly by defendants in effect. *See McCoy*, 981 F.3d at 282. The Court considers the old policy statement applicable to motions brought by BOP as helpful but non-binding guidance. *See id.* at 282 n.7. In April 2023, the Sentencing Commission voted to amend the policy statements and make them applicable to defendant-filed motions. *See Sentencing Guidelines for United States Courts*, 88 Fed. Reg. 28254 (May 3, 2023), https://www.govinfo.gov/content/pkg/FR-2023-05-03/pdf/FR-2023-05-03.pdf. If Congress does not act, the amendments will become effective on November 1, 2023. *Id.* at 28281. For this motion, the Court will also consider these amended policy statements as helpful but non-binding guidance. *See United States v. Bacon*, No. 17-CR-98, 2023 WL 2588556, at *4 n.3 (E.D. Va. Mar. 21, 2023) (noting that although the amended guidelines "are not currently active," they "illustrate[] what likely is the Commission's view on what constitutes 'extraordinary and compelling reasons' for a sentence reduction under the First Step Act"). But its decision would be the same even if the proposed amended statements were binding.

7

care. *See, e.g.*, *United States v. Norris*, 458 F. Supp. 3d 383, 386 (E.D.N.C. 2020) (age and health conditions, when considered in light of the COVID-19 pandemic, constituted extraordinary and compelling circumstances); *Woodard v. United States*, 469 F. Supp. 3d 499, 502–03 (E.D. Va. 2020) (collecting cases and holding the same); *United States v. Malone*, 57 F.4th 167, 175, 178 (4th Cir. 2023) (reversing district court's denial of compassionate release after finding that a defendant's age, "numerous health conditions," and "severe risk" of COVID-19 constituted extraordinary and compelling circumstances). Mr. Randleman makes no argument that he has health conditions necessitating release. In fact, he explicitly "does not contend to have medical conditions," Doc. 24 at 1, and his medical records seem to confirm this. *See* Docs. 29-1, 29-2.

  Instead, Mr. Randleman argues that the ongoing pandemic has made his sentence "harsher and more punitive" than the Court envisioned at his original sentencing. Doc. 24 at 2–3. While circumstances that "undoubtedly increase a prison sentence's punitive effect" may constitute extraordinary and compelling circumstances in some individual cases, *see United States v. Kibble*, 992 F.3d 326, 336 (4th Cir. 2021) (Gregory, C.J., concurring), if every defendant who experiences hardship during their incarceration is entitled to a finding of extraordinary and compelling circumstances, compassionate release would become the "exception that swallows the general rule of finality." *United States v. Hancock*, Nos. 6-CR-206-2, 7-CR-71, 2021 WL 848708, at *5 (M.D.N.C. Mar. 5, 2021). This is particularly true of inmates confined in ordinary congregate living situations during the COVID-19 pandemic. Mr. Randleman's concerns about COVID-19, considering the low case numbers at FCI McDowell and his overall good

health, and in the absence of any particularized showing as to his conditions of confinement during the pandemic, do not constitute extraordinary and compelling circumstances.

### 2. Family Circumstances

The bulk of Mr. Randleman's motion is focused on his need to be "at home to be a caretaker for his mother." Doc. 24 at 2. The need to care for an aging or ill parent can be an important factor in finding extraordinary and compelling circumstances, especially when other factors support release. *See, e.g.*, *United States v. Henriquez*, No. 15-CR-225, 2021 WL 5771543, at *4–5 (M.D.N.C. Dec. 6, 2021); *United States v. Hasanoff*, No. 10-CR-162, 2020 WL 6285308, at *3–4, 6 (S.D.N.Y. Oct. 27, 2020); *United States v. Bucci*, 409 F. Supp. 3d 1, 2–3 (D. Mass. 2019); *United States v. Walker*, No. 11-CR-270, 2019 WL 5268752, at *2–3 (N.D. Ohio Oct. 17, 2019). But courts in this circuit have been hesitant to grant relief when the defendant fails to demonstrate that he or she is the "only" available caregiver. *See, e.g.*, *United States v. Shovely*, No. 15-CR-105, 2021 WL 667906, at *3 (W.D. Va. Feb. 19, 2021); *United States v. Gregory*, 538 F. Supp. 3d 562, 569 (D. Md. 2021); *United States v. Allen*, No. 13-CR-24, 2021 WL 3025458, at *3 (W.D. Va. July 16, 2021); *see also Henriquez*, 2021 WL 5771543, at *3 (noting that "courts in the Fourth Circuit have generally denied compassionate release on these grounds when other caregivers are available" and collecting cases). Additionally, courts have denied relief when the defendant has failed to demonstrate that his or her parent is incapacitated and incapable of self-care. *See, e.g.*, *United States v. Crawford*, No. 14-CR-138, 2022 WL 868065, at *3 (M.D.N.C. Mar. 4, 2022) (defendant failed to

demonstrate that his parents were incapacitated and that no other caregiver was available); *Allen*, 2021 WL 3025458, at *3.

Although not yet in effect, the Sentencing Commission's recently adopted policy statement generally aligns with how courts have addressed this issue and specifically states that extraordinary and compelling circumstances exist when a defendant's parent is incapacitated and the defendant is "the only available caregiver." *See Sentencing Guidelines for United States Courts*, 88 Fed. Reg. at 28255.

While the Court does not doubt that Ms. Lowery is in poor health, the evidence of record does not establish that she is incapacitated and in need of a full-time caregiver. The Probation Office's report seems to suggest that she currently lives alone, *see* Doc. 28, and it notes that she "struggles to get around" but does not mention any incapacitation. *Id.* Mr. Randleman contends that his mother sometimes forgets to take her medications and that she cannot "really use [the] left side of her body due to her stroke," Doc. 31 at 1–2, but these statements are not corroborated elsewhere in the record and do not, on their own, establish extraordinary and compelling circumstances.

Additionally, Mr. Randleman has not shown that he is the "only" available caregiver. He has a maternal half-brother, and the evidence that the half-brother is not an available caregiver is uncorroborated. The compassionate release statute's "extraordinary and compelling" requirement "set[s] an exceptionally high standard for relief," *McCoy*, 981 F.3d at 288, and Mr. Randleman has not met his burden to establish extraordinary and compelling circumstances. *See United States v. Cox*, No. 11-CR-474, 2023 WL

10

3497307, at *2 (D.S.C. May 17, 2023); *United States v. Locust*, 591 F. Supp. 3d 12, 18 (E.D. Va. Mar. 16, 2022).

Mr. Randleman also makes an argument based on his ineligibility for FSA Earned Time Credits. Doc. 24 at 2. He states that "he is FSA ineligible due to the BOP counting the [18 U.S.C. § 924(c) crime] as violent." *Id.* His records confirm that he is "FSA Ineligible." Doc. 24-5 at 1. Under 18 U.S.C. § 3632(d)(4)(D)(xxii), inmates serving a sentence for a § 924(c) conviction "relating to unlawful possession or use of a firearm during and in relation to any crime of violence or drug trafficking crime" are ineligible to receive FSA Earned Time Credits. Mr. Randleman was convicted of a violation of § 924(c) for possessing a firearm in furtherance of a drug trafficking crime. Doc. 22 at 1. He does not explain why the Court should, in effect, give him FSA earned time credits that Congress has decided should not apply, and his ineligibility for FSA credits does not constitute extraordinary and compelling circumstances.

### B. Sentencing Factors

Even if Mr. Randleman were able to show extraordinary and compelling circumstances, the § 3553(a) factors do not support release. He is currently incarcerated for distributing cocaine hydrochloride and possessing a firearm in furtherance of a drug trafficking crime, Doc. 22, Doc. 18 at ¶¶ 1–2; these are serious offenses. While he committed his prior felony convictions over 25 years before the instant offenses, *see* Doc. 18 at ¶¶ 32–33, his approximately nine years in prison did not completely deter him from criminal conduct. Between the ages of 27 and 34, Mr. Randleman acquired six misdemeanor convictions: two for resisting a public officer, *id.* at ¶¶ 34–35; one for

driving while impaired, *id.* at ¶ 36; one for driving without a license, *id.*; one for assaulting a government employee, *id.* at ¶ 37; one for communicating threats, *id.*; and one for possession of drug paraphernalia. *Id.* at ¶ 38.

Additionally, Mr. Randleman has served only about 45 months of his 75-month sentence. A sentence reduction would not recognize the seriousness of the offenses or protect the public, especially in light of the mandatory 60-month sentence on the firearms charge. *See* 18 U.S.C. § 924(c)(1)(A)(i). The Court appreciates that Mr. Randleman only has one disciplinary report from his time in prison, *see* Doc. 28 at 1, and that he plans to work and care for his mother once released. Doc. 24 at 2; Doc. 31 at 1–2. But these factors do not outweigh his criminal history and the seriousness of the offense.

## VI. Conclusion

Mr. Randleman has not shown extraordinary and compelling circumstances and the § 3553(a) factors do not support a sentence reduction. His motion will be denied.

It is **ORDERED** that the defendant's motion for compassionate release, Doc. 24, is **DENIED**.

This the 2nd day of June, 2023.

_____
UNITED STATES DISTRICT JUDGE